### A. N. McKay et al. v. A. McKinnon et al.

Decided November 24, 1909.

**1.—Contract—Sale of Land—Specific Performance.**

Evidence considered and held insufficient to support an action for specific performance of an alleged contract for the sale of land on credit, and to justify the court in instructing a verdict for the defendant.

**2.—Same—Principal and Agent—Terms of Sale.**

An agent to sell has no authority to sell on a credit unless specially authorized to do so by his principal.

Appeal from the Eleventh Judicial District, Harris County. Tried below before Hon. Chas. E. Ashe.

*S. Taliaferro, G. L. Teat* and *Brockman, Kahn & Newman,* for appellants.—General authority from a principal to an agent, to the effect that anything the agent shall do in the matter of disposing of the land for the principal will be all right with him, carries with it the authority to execute a contract of sale providing for a forfeiture of earnest money if default is made by the purchaser. Collins & Douglas v. Cooper, 65 Texas, 460; McAlpin v. Cassidy, 17 Texas, 449; 1 Am. & Eng. Ency. of Law, 988-990; Simpkins on Contracts, 430.

*Stewart, Stewart & Lockett, Campbell & Wren, John Archer Read, Bryan & McRae* and *Vasmer & Briant,* for appellees.—An agent will be held to possess, as an incident to his general authority, such power as may be necessary to effectually carry out the purpose for which the agency is created; but where the agency is created only for the purpose of effecting a sale of real estate, the agent's power will not be so extended as to authorize the execution of an option under the terms of which the sale of the property could be frustrated during the period of the option. Collins v. Cooper, 65 Texas, 464; Field v. Small, 17 Col., 386; Tibbs v. Zirkle, 104 Am. St. Rep., 977.

NEILL, Associate Justice.—This suit was brought by appellants against appellees to enforce specific performance of the alleged contract, copied below in our conclusions of fact, claimed by appellants to have been made by McKinnon to McKay for the sale of certain lands therein mentioned.

After a general denial, the defendant McKinnon pleaded specially that he did not enter into the alleged contract nor authorize any one else to make it for him, and that it is not his contract nor the contract of any authorized agent acting for him; that plaintiff McKay claims to have bought the land from W. T. O'Connor, who pretended to act as the agent of defendant, and claims that O'Connor executed the contract sued on as defendant's agent; that O'Connor was not authorized to act as his agent at the time he pretended to act, nor was he authorized at any time to sell the land at the time and on the terms he is averred to have sold it to said plaintiff; that O'Connor never had any power to act as attorney in fact for him, nor power to sell the land in question at the time and at the price it is claimed he did sell; that the only dealings defendant ever had with O'Connor was merely as a real estate agent and broker with authority to sell the land at a certain price, which was not the price he sold for; that he never at any time conferred any authority upon O'Connor to execute a contract of sale; but that what dealings defendant had with him (which had terminated long before the time he is alleged to have sold to plaintiff) were to produce a purchaser for said land at a price different from the price (it being more) O'Connor is claimed to have sold to plaintiff; that the contract claimed by plaintiff was for the sale of land, and was not in writing signed by the defendant nor by any authorized agent of defendant, and is contrary to the statute of frauds, which statute is specially pleaded by defendant.

The other defendants, John S. Stewart, P. H. Bryant, G. A. Brandt, F. E. Rue and W. E. Humphreville, appellees herein, who acquired interests in the land, after specially pleading certain matters which we deem unnecessary to mention, adopted the answer of their co-defendant McKay, and by a cross-bill against plaintiffs and McKay, claimed the land as their own, and asked judgment therefor.

The case was tried before a jury, who rendered a verdict in favor of the defendants in obedience to the peremptory instruction of the court.

*Conclusions of fact.*—This is the writing sued on:

"Houston, Texas, September 7, 1907.

"Received from A. N. McKay $200, being in part payment of purchase money on 245 acres of land belonging to A. McKinnon, near La Porte, in Harris County, Texas, located in the Scott survey. The consideration agreed upon is $2,200, half cash on the delivery of deed and satisfactory abstract, the remaining half to be paid in one and two years, equal annual payments, at the rate of seven percent per annum. If the title proves to be good and satisfactory, then the said McKay is to take his deed and make his payment within thirty days from the date hereof, and the said McKinnon is to furnish an abstract of title showing good title and deliver the deed within that time. If for any reason the said McKinnon does not comply with the contract within thirty days, then the said McKay is not bound hereby to make the payments as specified. If the said McKay refuses to accept deed when tendered with an abstract showing satisfactory title,

then the $200 deposited as earnest money in this case shall be for-
feited by him.

"W. T. O'Connor.

"Witness:   Effie Keith.                   "Agent, A. McKinnon."

Viewing the evidence in the light most favorable to appellants, we
conclude that it was sufficient to raise the issue as to whether O'Con-
nor, who was a real estate broker, was authorized as the agent of the
defendant McKinnon, who was the owner of the land, to effect a sale
thereof for the latter for the sum of $1,700.  But there is no evidence
tending to show that O'Connor had any authority whatever to effect a
sale of the premises upon any other terms than cash, or to confer upon
any one an option to purchase the land upon any terms whatsoever.

*Conclusions of law.*—We conclude, in view of the facts found, that
the writing copied in the foregoing conclusions will not support plain-
tiff's action for a specific performance of a contract to convey land
(J. B. Walkins Land Co. v. Campbell, 100 Texas, 542; Colvin v.
Blanchard, 101 Texas, 231; Donnan v. Adams, 30 Texas Civ. App.,
615), and that, therefore, the court did not err in peremptorily in-
structing a verdict for the defendants.

ON MOTION FOR REHEARING.

It is insisted in this motion that we erred in holding in the original
opinion that there was no evidence tending to show that O'Connor had
any authority whatever to effect the sale upon any other terms than
cash.  Here is the evidence upon which appellants rely to show that
we erred in such finding, and that O'Connor was empowered to sell
upon other terms, and to prove that as McKinnon's agent he was au-
thorized to make the contract upon which this action is based:

"Mrs. W. F. Check testified, on behalf of the plaintiffs, that she
worked in the office of W. T. O'Connor during the few months prior
to the making of the sale to the appellants in this case, as well as for
several years previous, and was working for him at the time the sale
was made; that O'Connor had had this land listed with him for some-
thing like three years, and that for a month or two before the sale of
the land to appellants O'Connor had a deal on with one of the cus-
tomers of an associate real estate firm, under the style of Clark &
Gore, the customer being one W. S. Holmes; that the proposed sale to
Holmes fell through; that McKinnon came into O'Connor's office
shortly afterward, very much disappointed at the failure of the sale to
Holmes, and said to O'Connor:  'I must sell that land; I want to
sell it;' and I don't know exactly what the Judge said, but he said,
'I want to sell it; I need the money;' and he said, 'I will be willing
to take $1,700, and if not that, $1,600'—in a careless way—'to get rid
of it;' he said he had to sell it, he needed the money; before that time
he told Judge O'Connor if he got a buyer, to make out a contract, sign
it, and send it to him, and he would send him the deed.  This hap-
pened in the month of August (1907).  With reference to the Clark &
Gore matter, that sale was not on at that time; that was declared off.

It was at the failure of that deal that McKinnon came into the office; he came in several times during that sale; it had not gone through, and when it had not he appeared anxious to sell. He said something to Judge O'Connor with reference to closing up and signing contracts if he should get a purchaser. In a conversation with the Judge he told him, he said, 'If you sell that land,' he said, 'I must get rid of it, because I need the money,' but I can not state exactly what it was, but he gave the Judge authority to sell it, and told him to sign up the contract and send it to him, and anything he did would be all right with him. That conversation and authorization was not after the Clark & Gore matter had fallen through—it was before. I heard McKinnon tell the Judge; he was standing in the middle of the floor and there was some gentleman with him, Mr. ——, and he said: 'Judge, I want you to sell that land,' and the gentleman said something about the price being too high, and he said: 'Well, if you can't get that, sell it for less; get $1,700—$1,600, if you can't get more; I have to have the money; I need it.' That conversation was right after the Clark & Gore failure to sell the land; that was in the month of August, or close to September; I do not remember the specific date it was. I know Mr. J. W. Oman; he did office at the same place; I know whether he was about there when the conversation was had; he was in the room waiting for the Judge; I was in the office on the 7th of September."

This evidence is copied from the statement subjoined to the proposition under the fourth assignment of error in appellants' brief, and we think presents the evidence upon the question in the most favorable light that can be reflected from the record. After pondering over it and considering it as best we can, we are unable to reach the conclusion that it is sufficient to warrant a jury to find that McKinnon authorized O'Connor to make a contract of sale such as is set out in our conclusions of fact; or one upon any other terms than for a cash consideration. It is elementary that an agent to sell has no authority to sell on a credit, unless specially authorized to do so by his principal. Authority not having been conferred by McKinnon upon O'Connor to sell upon other terms than cash, and the former having repudiated the written contract sued upon, we thought it sufficient to say in our original opinion that McKay could not enforce its specific performance.

Appellants insist that we further decide whether or not the contract was simply an option. Since a contract, upon a sufficient consideration, conferring upon one the right to purchase property upon specific terms within a definite period of time, can, upon the purchaser's exercising his right to buy in accordance with the terms of such contract, be specifically enforced, we deem the question, as to whether the writing sued on was an option or not, purely academic. For whether it is deemed an option or not, the contract can not be enforced because O'Connor was not authorized by his principal to sell the land upon any other terms than for a cash consideration. The motion is overruled.

*Affirmed.*

Writ of error refused.